### B. CESTIA & J. SEIGNOURET *v.* FERRANDON & CESSAC.

Proceedings were instituted against defendants, who were non-residents, or absent from the State; a curator ad hoc was appointed to represent the absent defendants. An exception was filed in the cause, setting up that the defendants had a duly appointed attorney in fact, residing in the State, who was empowered to represent them, and that he should have been cited to defend the action. On the trial of the exception, it appeared in evidence that the attorney in fact had refused to accept the mandate, but afterwards substituted another person to act for defendants :

*Held* :—That the exception was not well taken; that the attorney in fact, who had refused to accept the mandate himself, could not substitute another person as attorney under the mandate; that the appointment of the curator ad hoc was regular and correct.

APPEAL from the Sixth District Court of New Orleans, *Duplantier*, J. C. *Roselius* and *A. Philips*, for plaintiffs and appellants. *J. L. Tissot*, for defendants and appellees.

TALIAFERRO, J. In May, 1859, the plaintiffs, as partners in commendam, entered into a commercial partnership with the defendants, under the name and style of Ferrandon & Cessac. The association was engaged in the dry goods business, in New Orleans, and, by its limitation, was to terminate at the end of the year 1865. It appears that the partnership became embarrassed in its commercial operations. In August, 1862, the store in which its business was conducted was closed, and it does not appear that the house did much business afterwards. The creditors of the firm became clamorous, and efforts (for the most part ineffectual) were made to compromise with them. The defendants, Ferrandon & Cessac, left the State in 1864; the former in the spring of the year, the latter about the first of July, one of them taking with him about two thousand dollars in cash, or rather as the record shows, that sum was sent to him after he left. With this state of affairs the plaintiffs, the partners in commendam, became dissatisfied. A few days after the departure of Cessac, they sued out a writ of sequestration, under which the entire stock of goods and assets of the concern were seized. A receiver was appointed, and the business of the firm put in liquidation. The proceedings were carried on contradictorily, with a curator ad hoc duly appointed at their inception.

A short time before leaving the State, Cessac, acting in the name of the firm, executed by notarial act a power of attorney to Joseph Bayle, authorizing him to transact the business of the partnership generally, and specifying, among other things, the authority to sue on the part of the firm, and to defend suits brought against it. The mandatory was not a party to this act, and nothing appears in the instrument showing that he accepted the mandate. But afterwards, on the 27th of July, he appointed Edward Dubois in his place. This substitution appears not to have been accepted in any manner by Dubois, and Bayle, by public act, on the 24th of October of the same year, delegated his power to Charles Espenau.

The record shows an admission by the parties, that this second substitute engaged Mr. Tissot, an attorney at law, to defend the suit brought by the plaintiffs against the defendants, although the exception filed by the attorney representing the defendants appears to have been filed on the 24th of August, previous to the substitution of Espenau.

The receiver proceeded, under authority of the Court, to sell for cash, on the 20th of September, the stock of merchandize and the assets generally of the firm ; and, on the 15th of October following, presented his account and tableau. Oppositions were filed by the curator ad hoc and some of the creditors. These oppositions were afterwards withdrawn, and on the 29th of October the account was duly homologated, and an order rendered that payments to the creditors be made in conformity with the tableau.

The exception before referred to is of the peremptory kind, and was tried on the 24th December, 1864. On the 9th of January following, the Court rendered judgment sustaining the exception and dismissing the suit, on the ground that, in the opinion of the Court, defendants had established satisfactorily that they had an agent in New Orleans, and that the exception filed was a sufficient notice to plaintiffs to discontinue their proceedings.

From this judgment the plaintiffs have appealed.

We are unable to concur with the Judge a quo in the conclusions to which he arrived. The procuration from the defendants to Bayle seems to have been ignored by him. He states clearly in his own testimony, given in the case, his refusal to act under the mandate, and his reasons for refusing. This was, that he was threatened that, if he acted under the power of attorney himself, he would be liable. He was cognizant of the proceeding taken against the defendants. He states, in particular, that he was notified of the taking of the inventory, and that he refused to act. It is not shown or pretended that his fear of liability, if he acted under the mandate, was in any manner brought about by the agency of the plaintiffs. From his own declarations, and refusal to participate on behalf of the defendants in any of the proceedings going on, to his knowledge, against them, we do not see that the plaintiffs were bound to recognize him as agent of the defendants. Having declined to act, it is not clear that he could, afterward, by a substitution, impower another to perform under the mandate, acts which he refused to perform himself.

For these reasons, we think the judgment of the lower Court should be altered.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; that the exception be overruled; and it is further ordered, adjudged and decreed, that the receiver's account and tableau be homologated and confirmed, and payments made in conformity with the same. The defendants and appellees paying costs in both Courts.